IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 3:24-cr-50 |
| v. ) | |
| ) | GOVERNMENT'S |
| STEPHEN BRODY CRAIN, ) | SENTENCING MEMORANDUM |
| ) | AND REQUEST FOR UPWARD |
| Defendant. ) | VARIANCE |

The government, by and through the undersigned Assistant United States Attorney, files this sentencing memorandum in anticipation of the sentencing hearing set for August 7, 2025, at 9:00 a.m.

**TABLE OF CONTENTS**

**I.    BACKGROUND** ........................................................................................1

**II.   SENTENCING CALCULATION** ...........................................................2

**III.  SENTENCING ARGUMENT REGARDING VARIANCE** .................2

**IV.   GOVERNMENT'S RECOMMENDATION** ..........................................3

**I.    BACKGROUND**

A two-count Indictment was filed on September 10, 2024, in the Southern District of Iowa, charging Stephen Brody Crain (Defendant) with Interstate of Foreign Transmission of a Threat (Counts One and Two), in violation of 18 U.S.C. § 875(c). (Final Presentence Investigation Report, hereinafter "PSR." R. Doc. 41, ¶ 1.)

On April 14, 2025, Defendant pled guilty to Count One of the two-count Indictment. On April 29, 2025, the Court accepted Defendant's plea and adjudicated

him guilty. The government agrees to dismiss Count Two at the time of sentencing. (PSR, R. Doc. 41, ¶¶ 2-3.)

## II.   SENTENCING CALCULATION

In the presentence report paragraphs 38-47 and 133, Defendant's guideline range was calculated as follows:

| | |
|---|---|
| Base Offense Level<br>USSG §2A6.1(a)(1) | 12 |
| Specific Offense Characteristics<br>USSG §2A6.1(b)(2)(A) | +2 |
| Adjustment for Obstruction of Justice<br>USSG §3C1.1 | +2 |
| Acceptance of Responsibility<br>USSG §3E1.1(a), (b) | -3 |
| Total Offense Level | **13** |
| Criminal History Category | III |
| Guideline Sentencing Range: | 18 to 24 months |

## III.   SENTENCING ARGUMENT REGARDING VARIANCE

Defendant was convicted of one count of making a threatening communication with relevant conduct that includes another victim. This crime of repeatedly threatening these two victims will have lifelong effects on the victims as Victim One expressed in her victim impact statement[1]. The guidelines calculated in this case do not take into account the terror suffered by the victims due to Defendant's threats.

---

[1] Sentencing Exhibit 6

USSG § 2A6.1 application Note 4(A) states that "[f]actors not incorporated in the guideline may be considered by the court in determining whether a departure from the guidelines is warranted" due to this guideline covering a wide range of conduct. For example, this guideline would cover the conduct of sending a threatening letter to a judge from a person that is incarcerated with no ability to effectuate the threat. This guideline also is used for conduct as in this case where there are two victims that are tormented over time, by Defendant all while the victims believed he was in the area. Additionally, in Note 4(B) it states that if "substantially more than two threatening communications to the same victim" or "a prolonged period of making harassing communications to the same victim" than an upward departure[2] may be warranted. This crime took place from January through October 2024 and involved continual threats, increasing in violence.

In addition to the guideline application notes, the Court should consider a variance under 18 U.S.C. § 3553(a) which will be discussed more below.

## IV.     GOVERNMENT'S RECOMMENDATION

The sentencing statutes inform this Court that it must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of Defendant; and to provide Defendant with needed educational or vocational training,

---

[2] Upcoming sentencing guideline amendments will eliminate departures, so although the guideline uses "departure" the government will be asking for a variance.

medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The Court, in determining the particular sentence to be imposed, shall also consider the nature and circumstances of the offense and the history and characteristics of Defendant. 18 U.S.C. § 3553(a)(1). The sentence must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The government will ask the District Court to find a final advisory guideline range of Level 13/Criminal History category III: 18 to 24 months. The statutory maximum term of imprisonment is five years. As noted above, the sentencing guideline calculation is inadequate to meet the sentencing goals. The government is seeking a sentence to would incapacitate Defendant for the maximum amount of time to protect these victims as well as others within the community. This Defendant has shown a pattern of threatening multiple victims since 2016. And even after serving a term of imprisonment for like conduct, Defendant continued the behavior.

The history and characteristics of Defendant warrant an upward variance. The facts of this case resemble the conduct in the past. As noted in paragraphs 48-50 and 53 of the PSR, Defendant threatened a prior victim by sending threatening messages from nine different phone numbers, changing his number once the victim blocked the number. Defendant sent pizza and Jehovah Witnesses to the residence as a way to harass this victim. Defendant called child services to falsely report abuse which caused personnel to investigate the claim. All this conduct was admitted to by Defendant, who stated that he did this conduct because the victim was a bad person.

Defendant threatened a female in May 2021, as noted in paragraph 51 of the PSR. In that case, Defendant threatened to kill family members and used the term "stage 2". The female's fiancé had been threatened by Defendant in 2017 to the point that the fiancé sent Defendant $10,000 to get the threats to stop.

The aggravated facts of this case warrant an upward variance. The conduct in this case began around January 2024[3] and continued until October 2024, even while Defendant was in custody of the Texas Department of Corrections on his state case. This case has the same modus operandi as the prior cases. This case involved threats to the lives of family members, the use of the term "stage 2", the sending of pizza to the victims' address, the demand for money to be paid, and making false reports to the Department of Human Services (DHS). In this case, the threats were made due to Defendant blaming Victim One for him being sent to jail.

In this case there are two noted victims, however, there was a third victim where there was not a count charged for the conduct. Defendant threatened Tim Kahl by stating that "stage 2" meant putting a gun to his daughter's head. (PSR, ¶ 10.) This threat prompted the report to the Federal Bureau of Investigations and an investigation ensued.

The number of threats and content of the threats warrant an upward variance. Defendant sent threats from different phone numbers that contained specific threats to harm family members, specifically children. The text message threats to Victim One were accompanied by a note that was put in her mailbox. This was done by

---

[3] Defendant had been released from prison on November 1, 2023.

Victim One's sister at the direction of Defendant which led the victims to believe that Defendant was not states away in Texas as they thought but in Iowa, close enough to carry out the threats. Victims at the time did not know that Defendant was using Victim One's sister to assist Defendant in carrying out his threats by putting the letter into the victim's mailbox, providing Defendant with victim's new phone, and sending pictures of the victim's residence to Defendant.

Victim One was so frighted of Defendant that she sent money to him when he demanded payment. Defendant told Victim One to donate plasma in order to obtain money to send to him. In all, she sent $4117 at the demand of Defendant. The government asks the Court to order Defendant to pay this amount in restitution to Victim One.

The harm caused by the threats went beyond just Victim One and Two. Victim Two's mother reported to the police that her son was receiving threats wherein Defendant sent a text message with an X over pictures of Victim Two's mothers face and his two children. Additionally, there were calls made from Defendant to Victim One's daughter, who was the subject of many of the threats.

The conduct by Defendant caused the DHS to expend resources to fully investigate two false claims of abuse. (See PSR, ¶ 27-28.) In February 2024, a report came into DHS from "Victim Two" about abusive conduct by Victim One to her children. This report was not from Victim Two but Defendant. In Apil 2024, Defendant made a second report to DHS that involved false allegations of abuse by both Victim One and Victim Two. DHS is obligated to investigate claims of abuse to

children and did so in both instances, causing disruption to the family of the victims as they had to participate in interviews and convince DHS that the claims were in fact false.

The threats did not stop upon Defendant's arrest. Defendant sent letters to Victim One (September 23, 2024 (Government Ex. 1), and October 4, 2024 (Government Ex. 2)), Victim One's parents (September 23, 2024 (Government Ex. 3), and October 4, 2024 (Government Ex. 4)), and Victim One's sister (October 9, 2024 (Government Ex. 5)). In the letters Defendant offered them money to convince Victim One to drop the federal charges. Defendant has demonstrated that he will not be stopped from continuing his threatening behavior even while behind bars, however, the victims will have some comfort in the fact that he will not be able to act on any of these threats. Therefore, a lengthy sentence is warranted in this case.

WHEREFORE, the government prays the District Court consider this sentencing memorandum in determining Defendant's final sentence.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By: _/s/ Melisa Zaehringer_
Melisa K. Zaehringer
Assistant United States Attorney
U.S. Courthouse
131 E. Fourth Street, Suite 310
Davenport, Iowa 52801
Tel: (563) 449-5432
Fax: (563) 449-5433
Email: Melisa.Zaehringer@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2025, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

____U.S. Mail  _____ Fax  _____Hand Delivery

__X__ECF/Electronic filing    ____Other means

UNITED STATES ATTORNEY

By: _/s/ Alexandria Ogden_
       Paralegal Specialist