IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>STEPHEN BRODY CRAIN,<br><br>    Defendant. | CRIMINAL NO. 3:24-CR-50<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

**Table of Contents**

I.    Introduction ........................................................................................... 2

II.   A guideline sentence is greater than necessary to comply
with the 18 U.S.C. § 3553(a)(2) sentencing factors................................... 2

III.  Conclusion............................................................................................. 8

I.   **Introduction.**

On April 14, 2025, Mr. Crain accepted responsibility for his actions by pleading guilty to one count of interstate or foreign transmission of a threat in violation of 18 U.S.C. § 875(c). *See* ECF Nos. 2, 32, 33. This matter is scheduled for sentencing on August 7, 2025. ECF No. 36.

The final presentence report provides a total offense level of 13 and a criminal history category of III, resulting in an advisory guideline range of 18-24 months. ECF No. 41, ¶ 133.

| | |
|---|---|
| Base offense level | 12 |
| SOC: more than two threats under §2A6.1(b)(2)(A) | +2 |
| Obstruction of justice adjustment under §3C1.1 | +2 |
| Adjusted offense level | 16 |
| Acceptance of responsibility under §3E1.1(a) and §3E1.1(b) | -3 |
| Total offense level | 13 |

*Id.* ¶¶ 38-47. Mr. Crain did not object to this calculation. *See* ECF No. 40.

Mr. Crain will request a downward variance. In support, Mr. Crain will introduce letters of support and an allocution letter.

II.  **A guideline sentence is greater than necessary to comply with the 18 U.S.C. § 3553(a)(2) sentencing factors.**

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify,

the crime and punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487 (2011) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). "Underlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime.'" *Id.* at 487-88 (first quoting *Williams v. People of State of New York*, 337 U.S. 241, 247 (1949), and then citing *Pennsylvania ex rel. Sullivan v. Ashe,* 302 U.S. 51, 55 (1937)). Mr. Crain's life, as reflected in the PSR and letters of support, shows such mitigating human failings.

### Prior abuse and trauma

When Mr. Crain was approximately two years old, his father one day left him and his mother, Rebecca Parker, without saying a word. ECF No. 41, ¶ 64. In the process, he took everything from their home and all the money in Ms. Parker's bank account. *Id*. Mr. Crain's life seemed to improve a little once Ms. Parker married Leon Davis, but it did not last long. As Mr. Crain reports, his stepfather Davis was verbally abusive daily to him and his mother, and on several occasions became physically abusive. *Id*. Mr. Crain lived with his abusive stepfather throughout his whole childhood because his mother divorced Mr. Davis when Mr. Crain was 14 years old. *Id.* ¶ 66.

Instead of finding a supportive paternal figure in his stepfather, Mr. Crain found it in his maternal grandfather Joe Price. *Id.* Mr. Crain would rely on his grandfather for advice and support and enjoyed spending time with him. *Id.* Mr. Crain considered his grandfather his best friend and learned how to cook by taking

care of him, who at the time was disabled. *Id.* But that strong connection came to an end in 2014, when Mr. Crain was about 19 years old. That year, his grandfather, his best friend, his strongest positive role model, passed away. *Id.*

Mr. Crain's prior abuse and trauma supports a downward variance.

Mental health and drug use

Mr. Crain began using illicit substances from a very early age. He occasionally smoked marijuana until October of 2022, but began smoking it when he was 13 years old. *Id.* ¶ 99. He last consumed alcohol in July of 2024, but began consuming it at age 14. *Id.* ¶ 100. The alcohol use is additionally relevant because "he would get 'pretty drunk' and would occasionally lose consciousness." *Id.* At age 14, he also became addicted to opiates following a neck injury, and if he could, he would consume up to 15 pills per day. *Id.* ¶ 103.

At least one court has found that "substance-use disorders change individuals' brain functioning in ways that make it difficult for people grappling with addiction to avoid relapses during the course of their recovery." *United States v. Carter*, 506 F. Supp. 3d 1204, 1210 (M.D. Ala. 2020) (citing *United States v. Mosley*, 277 F. Supp. 3d 1294, 1298 (M.D. Ala. 2017)).

> An important characteristic of substance use disorders is an underlying change in brain circuits that may persist beyond detoxification, particularly in individuals with severe disorders. The behavioral effects of these brain changes may be exhibited in the repeated relapses and intense drug craving when the individuals are exposed to drug-related stimuli. These persistent drug effects may benefit from long-term approaches to treatment.

4

*Mosley*, 277 F. Supp. 3d at 1298 (quoting DSM-V at 483).

Mr. Crain's prior drug and alcohol issues, especially based on the likely effects they had on his mental health and brain development, supports a downward variance.

<u>Mental health and age</u>

While Mr. Crain does not request a downward departure, the Sentencing Commission's policy statements regarding both age and mental health are nonetheless instructive regarding the 3553(a) framework. As to age, "youthful individuals generally are more impulsive, risk seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation." U.S. SENT'G COMM'N, GUIDELINES MANUAL, §5H1.1 (U.S. SENT'G COMM'N 2024). And as to mental health, "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to such an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S. SENT'G COMM'N, GUIDELINES MANUAL, §5H1.3 (U.S. SENT'G COMM'N 2024).

Here, there is a mix of both. First, the effects of emotional and physical abuse on someone like Mr. Crain who has been abused at an early age are well known. As the Institute of Medicine and National Research Council notes,

> Child abuse and neglect appear to influence the course of development by altering many elements of biological, cognitive, psychosocial, and

5

> behavioral development; in other words, child abuse and neglect 'get under the skin' (Hertzman and Boyce, 2010) to have a profound and often lasting impact on development. Brain development is affected, as is the ability to make decisions as carefully as one's peers, or executive functioning; the ability to regulate physiology, behavior, and emotions is impaired; and the trajectory toward more problematic outcomes is impacted.

INST. OF MED. AND NAT'L RSCH. COUNCIL, NEW DIRECTIONS IN CHILD ABUSE AND NEGLECT RESEARCH 154-55 (Anne C. Petersen et al. 2014) (available at https://www.ncbi.nlm.nih.gov/books/NBK195985/pdf/Bookshelf_NBK195985.pdf).

Second, compounding this effect is the fact that Mr. Crain was diagnosed as a child with autism spectrum disorder. ECF No. 41, ¶ 65. At that time, he began receiving disability benefits and had difficulties at school. *Id.*

As time has passed, Mr. Crain has been diagnosed with other conditions, such as posttraumatic stress disorder, anxiety, and depression. *Id.* ¶ 90.

As we stand today, while Mr. Crain is approximately 30 years old, his mother believes his mental age is about half of that, at 15 or 16 years old. *Id.* ¶ 67. Whether the Court fully credits that statement or not, the one constant in this case is that Mr. Crain suffers from mental impairments.

As a district court has explained,

> the traditional rationales for punishment have less force when applied to mentally ill and cognitively limited defendants. Desert (blameworthiness) loses some bite because those with reduced ability to reason, or to control their impulses, are less deserving of punishment than those who act of viciousness or greed; Deterrence has less value because people with reduced capacities are less susceptible to a system of punishment and reward. The remaining rationale—incapacitation to protect the public safety—does not justify incarcerating mentally ill,

6

intellectually disabled defendants unless they are violent.

*United States v. Ferguson*, 942 F. Supp. 2d 1186, 1193 (M.D. Ala. 2013) (cleaned up) (internal citations omitted).

Mr. Crain's mental health and mental age support a downward variance.

<u>Rehabilitation</u>

"The hope of rehabilitation begins with accepting responsibility." *United States v. Helton*, 653 F. Supp. 3d 534, 539 (N.D. Ind. 2023) (citing *McKune v. Lile*, 536 U.S. 24, 47 (2002)).

Mr. Crain began that path by pleading guilty to the offense. He will likely continue on that path by participating in mental health treatment and substance abuse treatment, specifically medication assistance treatment (MAT) and the Residential Drug Abuse Program (RDAP). *See* ECF Nos. 41, ¶¶ 97, 112. In addition, he wishes to participate in business classes, college courses, and receive vocational training for carpentry. *Id.* ¶ 118.

He has and will continue to have the support of his stepfather Clint Parker and his mother Rebecca Parker. Both of their letters highlight Mr. Crain's potential for rehabilitation.

As Ms. Parker notes, "[d]iagnosed with Autism and Tourette's Syndrome at a young age, Stephen faced many numerous challenges that would have broken a lesser spirit. Yet, he persevered, adapting to each new obstacle with courage and grit." Ex. A. Moreover, "Stephen is committed to turning his life around and making the most

of this second chance. He is very eager to reconnect with his family, particularly his two daughters, [AC and HC], so he can start to rebuild his relationships." *Id.*

And as his stepfather notes, "I firmly believe that Stephen has learned from his mistakes. He will make an upstanding citizen upon his release for sure. Through his encounters in his current punishment, he has written about the experiences so far in county that have changed him, much less the road ahead." Ex. B.

The potential for rehabilitation supports a downward variance.

### III. Conclusion.

Wherefore, Mr. Crain respectfully requests that the Court impose a sentence consistent with the arguments in this sentencing memorandum.

Respectfully submitted,

FEDERAL DEFENDER'S OFFICE
CBI Bank & Trust Building
101 W. 2nd Street, Suite 401
Davenport, Iowa 52801-1815
TELEPHONE: (563) 322-8931
TELEFAX: (563) 383-0052
EMAIL: abdel_reyes@fd.org

By: /s/*Abdel Reyes*
 **Abdel Reyes**
 Assistant Federal Defender
 ATTORNEY FOR DEFENDANT

cc: Melisa K. Zaehringer, AUSA

CERTIFICATE OF SERVICE
I hereby certify that on July 31, 2025, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.
 /s/ Natalie Gahan